# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

A. MARGARET CARRANZA *et al.*,      :
                                     :
                  Plaintiffs,        :        Civil Action No.:       05-0117  (RMU)
                                     :
            v.                       :        Re Document Nos.:   29, 30
                                     :
PHILLIP FRAAS,                       :
                                     :
                  Defendant.         :

## <u>MEMORANDUM OPINION</u>

**DENYING THE PLAINTIFFS' RENEWED MOTION FOR RELIEF UPON RECONSIDERATION;
GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S RENEWED MOTION FOR
SUMMARY JUDGMENT WITHOUT PREJUDICE**

## I. INTRODUCTION

The plaintiffs are female farmers who hired the defendant, attorney Phillip Fraas, to

represent them in a civil rights discrimination claim against the United States Department of

Agriculture ("USDA").  After settlement negotiations with the USDA failed, the plaintiffs

commenced this action against the defendant for legal malpractice and breach of fiduciary duty,

claiming that the defendant failed to exercise reasonable skill, care and diligence while

representing them in their civil rights claim.  The plaintiffs subsequently filed a motion

requesting a court-appointed expert witness, which this court denied.

The plaintiffs have now filed a motion for relief upon reconsideration of that ruling, again

asking the court to appoint an expert witness on their behalf.  The defendant has, in turn, filed a

motion for summary judgment, asserting that the plaintiffs cannot succeed on their claims

without expert testimony.  Because it would be inappropriate for the court to appoint an expert

witness in this case, the court denies the plaintiffs' motion for relief upon reconsideration.

Furthermore, because only one of the plaintiffs' allegations of malpractice falls within the

"common knowledge" exception to the expert testimony requirement in legal malpractice cases, the court grants in part the defendant's motion for summary judgment. With respect to the one surviving allegation that does fall within the "common knowledge" exception, the court cannot determine at this time whether the entry of summary judgment is appropriate, as the evidence offered by the plaintiffs in opposition to the defendant's motion raises significant questions about the viability of that claim. Accordingly, the court denies this portion of the defendant's motion for summary judgment without prejudice and grants the parties leave to file supplemental briefing on this remaining issue. Consequently, the court also denies without prejudice the defendant's motion for summary judgment on the plaintiff's breach of fiduciary duty claim.

## II.  FACTUAL & PROCEDURAL BACKGROUND

### A.  Factual Background

The plaintiffs are female farmers who reside in Richland County, Montana. Compl. ¶ 3. In the early 1990s, the USDA threatened to foreclose on the plaintiffs' property based on their purported failure to repay loans owed to the Farm Service Agency ("FSA"). *Id.* ¶¶ 5, 9; Pls.' 1st Mot. for Relief Upon Recons. ("Pls.' 1st Mot. for Recons.") at 1-2. The plaintiffs subsequently commenced a civil rights action against the USDA, alleging that the USDA had discriminated against them during their participation in the USDA's Farm Loan Programs and during the course of the plaintiffs' attempts to obtain Chapter 12 bankruptcy protection. Pls.' Opp'n to Def.'s Renewed Mot. for Summ. J. ("Pls.' Renewed Opp'n") at 3.

In 1998, the plaintiffs retained the defendant to represent them in their action against the USDA. Compl. ¶ 5. In December 1998, the USDA made a settlement offer to the plaintiffs in the amount of $98,000. Pls.' Renewed Opp'n, Aff. of A.M. Carranza ("A.M. Carranza Aff."),

Ex. 2 at 1. After consulting with the defendant, the plaintiffs rejected this offer and proposed a counter-offer, which the USDA subsequently rejected. Pls.' Reply in Support of Mot. for Court-Appointed Expert Witness ("Pls.' 1st Reply") at 6. In April 2000, Rosalind Gray, the Director of the USDA Office of Civil Rights ("OCR"), requested information from the defendant concerning the plaintiffs' damages, presumably to aid in settlement of the plaintiffs' claim. *Id.* at 7. The defendant provided the requested information in September 2000. *See id.* at 7-8.

In January 2001, Gray allegedly extended a second settlement offer to the plaintiffs for an amount substantially higher than was offered in the USDA's initial offer.[1] *See* Pls.' Renewed Opp'n, Aff. of J. Carranza ("J. Carranza Aff.") ¶ 11. The plaintiffs allege that the defendant never informed them of this second offer. *Id.*; A.M. Carranza Aff. ¶ 5. According to the plaintiffs, because the defendant failed to communicate with them about the January 2001 settlement proposal and failed to provide certain paperwork requested by the USDA in connection with the offer, the January 2001 offer eventually expired. Compl. ¶ 7; Pls.' Renewed Opp'n at 4-7.

In January 2002, the plaintiffs traveled to Washington, D.C. to attend the trial of Sharon Mavity, an individual who had asserted discrimination claims against the USDA similar to those asserted by the plaintiffs. Pls.' Opp'n to Def.'s 1st Mot. for Summ. J. ("Pls.' 1st Opp'n") at 6-7. While in Washington, the plaintiffs allegedly met with Gray, who had since left her position as Director of USDA OCR, to discuss their claim against the USDA. Pls.' Renewed Opp'n at 4-6. During this meeting, the plaintiffs allegedly learned for the first time of the January 2001

---

[1] The amount of Gray's proposal in January 2001 is unclear. Although the plaintiffs indicate that the January 2001 offer may have been in excess of one million dollars, Pls.' Opp'n to Def.'s 1st Mot. for Summ. J. at 7, there is nothing in the record confirming that an offer was in fact extended to the plaintiffs in January 2001, much less any evidence confirming the amount of the January 2001 proposal.

settlement proposal. *Id.*; Compl. ¶ 6. On January 29, 2002, the plaintiffs terminated their attorney-client relationship with the defendant. *See generally* Pls.' Renewed Opp'n, Ex. 7.

## B. Procedural History

In January 2005, the plaintiffs filed their complaint against the defendant for legal malpractice and breach of fiduciary duty. *See generally* Compl. The court directed the plaintiffs to designate an expert witness by August 18, 2006. Minute Entry (Sept. 13, 2005). The plaintiffs did not designate an expert witness by that date. Instead, on September 11, 2006, the plaintiffs filed a motion requesting that the court appoint an expert witness on their behalf, citing Federal Rule of Evidence 706(a). *See generally* Pls.' Mot. for Court-Appointed Expert Witness. The defendant opposed the plaintiffs' motion and filed a motion for summary judgment. *See generally* Def.'s Opp'n to Pls.' Mot. for Court-Appointed Expert Witness; Def.'s 1st Mot. for Summ. J. ("Def.'s 1st Mot."). While the defendant's motion for summary judgment remained pending, the court denied the plaintiffs' motion for a court-appointed expert witness. *See generally* Mem. Order (Jan. 3, 2007).

In January 2007, the plaintiffs filed a motion for relief upon reconsideration of the court's ruling on their request for a court-appointed expert witness. *See generally* Pls.' 1st Mot. for Recons. The defendant failed to file a response within the allotted deadline presumably because the arguments raised in the plaintiffs' motion were identical to those in their initial motion for a court-appointed expert witness. Def.'s Opp'n to Pls.' 1st Mot. for Recons. ("Def.'s 1st Opp'n") at 1-2. At the court's prompting, however, the defendant subsequently filed a motion for leave to late-file his opposition together with an opposition to the plaintiffs' motion for relief upon

reconsideration.  *See generally* Def.'s Mot. for Leave to Late-File Opp'n to Pls.' 1st Mot. for

Recons.; Def.'s 1st Opp'n.

Before ruling on the plaintiffs' motion for relief upon reconsideration or the defendant's

motion for summary judgment, the court stayed this case because the Circuit was considering an

appeal from the court's ruling in *Mavity v. Fraas*, 456 F. Supp. 2d 29 (D.D.C. 2006).  Like the

plaintiffs in this case, the plaintiff in *Mavity*, the aforementioned Sharon Mavity, had

commenced a legal malpractice action against attorney Fraas based on her dissatisfaction with

the defendant's representation in her case against the USDA.  *Id.* at 31-32.  The court granted

summary judgment to the defendant because the plaintiff had not designated an expert witness as

required.  *Id.* at 34-35.  Because the court's decision in *Mavity* turned on the necessity of

providing expert testimony in an action for legal malpractice, *see id.* at 33-35, the court stayed

this action, noting that the Circuit's decision in *Mavity* could affect the outcome of the present

case.  *See* Order (Apr. 23, 2007).  In February 2009, after the Circuit affirmed this court's ruling

in *Mavity* and after the *Mavity* plaintiff's petition for certiorari was denied, the court lifted the

stay and ordered the parties to re-file any dispositive motions.

On March 23, 2009, the plaintiffs renewed their motion for relief upon reconsideration of

the court's ruling on their request for a court-appointed expert witness.[2]  *See generally* Pls.'

Renewed Mot. for Relief upon Recons. ("Pls.' Renewed Mot. for Recons.").  The defendant, in

turn, filed a renewed motion for summary judgment, arguing that the plaintiffs could not succeed

---

[2]        The plaintiffs filed their motion for relief upon reconsideration pursuant to Federal Rule of Civil
Procedure 59(e).  *See* Pls.' 1st Mot. for Recons. at 5-6.  Because, however, Rule 59(e) governs
altering or amending a final judgment, it is inapplicable in this context, as this court's ruling on
the plaintiffs' motion for a court-appointed expert witness did not constitute a final judgment.
*See* FED. R. CIV. P. 59(e).  Thus, the court treats the plaintiffs' motion as a motion for relief upon
reconsideration of an interlocutory decision pursuant to Rule 54(b).  *See id.* 54(b) (providing that
a district court may revise its own interlocutory decisions "at any time before the entry of
judgment adjudicating all the claims and the rights and liabilities of all the parties").

on their legal malpractice and breach of fiduciary duty claims without an expert witness, and that

their claims were barred by the doctrine of collateral estoppel based on this court's ruling in

*Mavity*.[3]  Def.'s Renewed Mot. for Summ. J. ("Def.'s Renewed Mot.") at 1-3.  With both

motions ripe for adjudication, the court turns to the applicable legal standards and the parties'

arguments.


### III.  ANALYSIS

#### A.  The Court Denies the Plaintiffs' Renewed Motion for Relief Upon Reconsideration

#### 1.  The Plaintiffs Are Not Entitled to a Court-Appointed Expert Witness Under Federal Rule of Evidence 706

In their renewed motion for relief upon reconsideration, the plaintiffs again request that

the court appoint an expert witness on their behalf pursuant to Federal Rule of Evidence 706(a).

Pls.' Renewed Mot. for Recons. at 1.  The plaintiffs acknowledge that in a legal malpractice

action, they have the burden of proving the standard of care through expert testimony.  *Id.* at 2;

*see infra* Part III.B.2.  They assert, however, that the court erred in denying their prior motion for

an expert witness because the court misapprehended the nature of their claims against the

USDA.[4]  Pls.' Renewed Mot. for Recons. at 1-2.  The defendant opposes the plaintiffs' motion,

---

[3]  The court turns first to the plaintiffs' claim for legal malpractice because the viability of their claim for breach of fiduciary duty depends on their ability to prove the elements of their legal malpractice claim.  *See Mawalla v. Hoffman*, 569 F. Supp. 2d 253, 257 (D.D.C. 2008) (stating that "[i]n professional malpractice cases, additional claims which are based on the underlying malpractice claim cannot survive if the professional malpractice claim fails"); *Macktal v. Garde*, 111 F. Supp. 2d 18, 23 (D.D.C. 2000) (stating that contract and tort claims arising out of a plaintiff's professional malpractice claim will fail if the plaintiff is unable to prove professional negligence); *see also infra* Part III.B.3.

[4]  The plaintiffs also contend that impermissible *ex parte* communication that occurred between one of the undersigned judge's law clerks and the defendant's counsel constitutes grounds for granting relief upon reconsideration of their motion for a court-appointed expert witness.  This contention is discussed *infra* Part III.A.2.

asserting that the plaintiffs have offered no new justifications for their request. Def.'s Opp'n to Pls.' Renewed Mot. for Recons. ("Def.'s Renewed Opp'n") at 3-4.

As the court already noted in its prior ruling on this issue, *see* Mem. Order (Jan. 3, 2007) at 2-6, Federal Rule of Evidence 706 allows courts, in certain limited circumstances, to designate an expert witness, FED. R. EVID. 706; *see also Applegate v. Dobrovir, Oakes & Gebhardt*, 628 F. Supp. 378, 383 (D.D.C. 1985) (noting that "'compelling circumstances' . . . make appointment of an expert by the court appropriate"). The decision to appoint an expert witness lies within the discretion of the court and "is to be informed by such factors as the complexity of the matters to be determined and the fact-finder's need for a neutral, expert view." *Tangwall v. Robb*, 2003 WL 23142190, at *3 (E.D. Mich. Dec. 23, 2003); *see also In re McGhan Med. Corp.*, 2000 WL 1521338, at *1 (Fed. Cir. Sept. 29, 2000); *Applegate*, 628 F. Supp. at 383. Courts do not, however, appoint expert witnesses for the purpose of assisting a litigating party. *See Hannah v. United States*, 2006 WL 2583190, at *4 (N.D. Tex. Sept. 1, 2006) (declining to appoint an expert witness for a *pro se* plaintiff because such appointment would merely assist the plaintiff prove his case rather than provide a neutral expert view for the court); *Daker & Kennedy v. Wetherington*, 2006 WL 648765, at *5 (N.D. Ga. Mar. 15, 2006) (noting that "[l]itigant assistance is not the purpose of Rule 706").

In their renewed motion for relief upon reconsideration, the plaintiffs assert that the court should appoint an expert witness to clarify matters related to their prior claims against the USDA, including "USDA credit policies, farm loan programs, mandated congressional loan servicing programs, USDA rules and regulations and how civil rights discrimination affects them." Pls.' Renewed Mot. for Recons. at 2. The plaintiffs have not explained, however, the relevance of these matters to their claims against the defendant in this case. *See id.* at 1-2.

Indeed, it would appear that the plaintiffs' request is motivated by their desire for an expert witness to help them prove their case rather than any need for a neutral expert view to assist the court. *See id.* Although the plaintiffs imply that they cannot secure an expert witness because they are indigent, *see id.* at 2, 4; Pls.' 1st Mot. for Recons. at 3, a *pro se* litigant's inability to secure an expert witness in a legal malpractice case does not constitute a "compelling circumstance" warranting the court's appointment of an expert witness, *Applegate*, 628 F. Supp. at 383. Accordingly, the court again concludes that the plaintiffs are not entitled to a court-appointed expert witness.

### 2. The Court Did Not Engage in Impermissible *Ex Parte* Communication

Before departing the plaintiffs' renewed motion for relief upon reconsideration, the court briefly addresses the plaintiffs' assertion that the court engaged in an impermissible *ex parte* communication when it requested that the defendant file an opposition to the plaintiffs' first motion for relief upon reconsideration. *See* Pls.' Renewed Mot. for Recons. at 4-7. As previously noted, in January 2007, the plaintiffs filed their first motion for relief upon reconsideration of the court's order denying their request for a court-appointed expert witness. *See generally* Pls.' 1st Mot. for Recons. Because the plaintiffs' motion for relief upon reconsideration merely rehashed arguments raised in the plaintiffs' original motion for a court-appointed expert, the defendant chose not to file an opposition. *See* Def.'s Mot. for Leave at 1. In March 2007, the court contacted the defendant through one of the undersigned judge's law clerks and requested that the defendant file an opposition to the plaintiffs' motion for relief upon reconsideration. *Id.* at 2. The defendant subsequently filed a motion for leave to late-file an opposition to the plaintiffs' motion, together with a proposed opposition. *See generally id*; Def.'s 1st Opp'n.

The plaintiffs contend that by requesting that the defendant file an opposition to the plaintiffs' motion, the court engaged in an improper *ex parte* communication evidencing the court's bias in favor of the defendant. Pls.' Renewed Mot. for Recons. at 4-7. The plaintiffs are mistaken.

*Ex parte* communications between a judge, acting through one of his or her law clerks, and counsel or a witness that do not touch upon the merits of the case generally do not warrant relief. *See, e.g.*, *Kaufman v. Am. Family Mut. Ins. Co.*, 601 F.3d 1088, 1095 (10th Cir. 2010) (upholding a district court's determination that a telephone call from a judge's law clerk to counsel was harmless and warranted no further investigation or sanctions); *Knop v. Johnson*, 977 F.2d 996, 1011 (6th Cir. 1992) (concluding that a law clerk's telephone call requesting that a witness file supplemental documentation did not warrant a new trial); *United States v. Helmsley*, 760 F. Supp. 338, 345 (S.D.N.Y. 1991) (stating that a phone call between a law clerk and counsel requesting that counsel submit a scheduling proposal was not impermissible and did not suggest bias because it did not involve discussion of the merits or of any issue in the case). During the phone conversation in which the court requested that the defendant file an opposition to the plaintiffs' motion, the substance of the case was never discussed. *See* Def.'s. Renewed Opp'n at 4.

Additionally, the plaintiffs were not denied any relief to which they were otherwise entitled as a result of the telephone call. Local Civil Rule 7(b) provides that "an opposing party has 14 days to file a memorandum in opposition to the motion, and if such party fails to do so, the Court *may* treat the motion as conceded." LCvR 7(b) (emphasis added). Whether to treat a motion as conceded is highly discretionary, *Int'l Painters & Allied Trades Indus. Pension Fund v. Benchmark Constr. Servs., Inc.*, 2010 WL 2521727, at *1 (D.D.C. June 22, 2010), and the

decision "lies wholly with the district court," *Fed. Deposit Ins. Co. v. Bender*, 127 F.3d 58, 68 (D.C. Cir. 1997). Because the court was not required to grant the plaintiffs' first motion for relief upon reconsideration as conceded, the plaintiffs were not denied any relief to which they were entitled as a result of the *ex parte* communication.

Finally, any prejudice allegedly suffered by the plaintiffs was mitigated by the fact that they responded to the defendant's opposition and opposed the defendant's motion for leave to late-file. *See Foster v. United States*, 615 A.2d 213, 221 (D.C. 1992) (holding that a judge's *ex parte* communication with one party was not impermissible, in "significant" part because the other party "had an opportunity to challenge" a revised sentencing recommendation and make other, more favorable recommendations to the judge on his behalf).

For these reasons, the court concludes that its *ex parte* communication with the defendant's counsel did not prejudice the plaintiffs and does not warrant granting the plaintiffs' request for a court-appointed expert.

### B. The Court Grants in Part and Holds in Abeyance in Part the Defendant's Renewed Motion for Summary Judgment

### 1. Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

## 2. The Defendant's Alleged Legal Malpractice

The plaintiffs allege that the defendant committed legal malpractice by (1) failing to meet USDA-imposed deadlines in pursuing a settlement in their civil rights discrimination claim, (2) failing to disclose a conflict of interest that resulted from his work as a registered lobbyist and (3) failing to inform them of the USDA's January 2001 settlement offer. *See* Compl. ¶¶ 7-8. The defendant argues that summary judgment should be granted in his favor because the plaintiffs cannot establish the elements of legal malpractice without the aid of expert testimony.

Def.'s Renewed Mot. at 1. More specifically, the defendant argues that the plaintiffs must present expert testimony to establish the applicable standard of care and to prove causation. *Id.* at 4-5. Because the plaintiffs have not designated an expert witness, the defendant asserts, they cannot establish the elements of their legal malpractice claim. *Id.* The defendant also contends that the plaintiffs' claims are barred under the doctrine of collateral estoppel because the issue of whether expert testimony is required in this case was resolved in *Mavity v. Fraas*. *Id.* at 5-6. The plaintiffs respond that no expert testimony is necessary because the defendant's alleged negligence falls within the so-called "common knowledge" exception to the expert testimony requirement. Pls.' Renewed Opp'n at 9-10. That is, the plaintiffs assert that the defendant's alleged negligence is so obvious as to obviate the need for expert testimony. *Id.*

To establish legal malpractice under D.C. law,[5] the plaintiffs must demonstrate the applicable standard of care, that the attorney violated that standard and that the violation caused a legally cognizable injury. *Kaempe v. Myers*, 367 F.3d 958, 966 (D.C. Cir. 2004); *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982). In making this showing, the plaintiffs "must present expert testimony establishing the standard of care unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *O'Neil*, 452 A.2d at 341; *see also Kaempe*, 367 F.3d at 966. Conduct falling within the "common knowledge" exception includes

---

[5]     While neither party provides even a cursory choice of law analysis, both rely on District of Columbia law in their submissions to the court. *See generally* Def.'s Renewed Mot.; Pls.' Renewed Opp'n. Because both parties assume that D.C. law applies, D.C. law is appropriately applied in this case. *See Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 65 (D.D.C. 2009) (stating that where all parties assume D.C. law applies, "[t]he Court need not and does not question the parties' assumptions on that point"); *see also CSX Transp., Inc. v. Commercial Union Ins. Co.*, 82 F.3d 478, 482-83 (D.C. Cir. 1996) (noting that parties may waive choice-of-law arguments); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) (stating that "courts need not address choice of law questions *sua sponte*").

allowing the statute of limitations to run on a client's claim; permitting entry of default judgment against the client; failing to instruct the client to answer interrogatories; failing to allege affirmative defenses; failing to file tax returns; failing to follow the client's explicit instructions; and billing a client for time not spent providing services.

*Kaempe*, 367 F.3d at 966 (internal citations omitted).

Because the plaintiffs failed to designate an expert witness before the allotted deadline and are not entitled to a court-appointed expert witness, they can satisfy the elements of their legal malpractice claim only if the defendant's alleged misconduct falls under the common knowledge exception. *See, e.g.*, *id.* at 966-67 (granting summary judgment to the defendant because the plaintiff provided no expert testimony to support his legal malpractice claim and none of his allegations fell within the common knowledge exception); *accord Mavity*, 456 F. Supp. 2d at 34-35. The court considers the plaintiffs' three allegations of misconduct in turn.

### a. The Defendant's Alleged Failure to Meet USDA-Imposed Deadlines in Connection With Settlement Negotiations Does Not Fall Within the Common Knowledge Exception

The plaintiffs allege that settlement negotiations with the USDA fell through because the defendant negligently failed to meet the deadlines imposed by the USDA and did not submit the paperwork necessary to pursue the January 2001 settlement offer. Compl. ¶ 7; Pls.' Renewed Opp'n at 4-6. The defendant denies that he failed to meet these deadlines. Answer ¶ 7. Moreover, the defendant contends that expert testimony would be required to establish that such a failure constituted malpractice, and that collateral estoppel bars the plaintiffs' claim. *See* Def.'s Renewed Mot. at 4-6.

The D.C. Court of Appeals has observed that "generally speaking, an attorney 'has a duty to pay attention to filing deadlines and not to let one go by in any pending case without doing whatever needs to be done.'" *Liu v. Allen*, 894 A.2d 453, 460 (D.C. 2006) (quoting *Cameron v. Wash. Metro. Area Transit Auth.*, 649 A.2d 291, 294 (D.C. 1994)). Failing to adhere to filing

deadlines is a type of negligence that may fall within the common knowledge exception. *See, e.g.*, *Fed. Trade Comm'n v. Hope Now Modifications, LLC*, 2010 WL 3001985, at *6 (D.N.J. July 27, 2010) (noting that an attorney's failure to meet a deadline constitutes a "more obvious legal malpractice case" than the rendering of "faulty legal advice regarding the complex legal requirements governing loan modification businesses").

Not every failure to meet a deadline, however, falls within the common knowledge exception. *See, e.g.*, *Liu*, 894 A.2d at 460-61 (concluding that an attorney's failure to meet a deadline to file a motion for relief upon reconsideration in an immigration proceeding did not constitute negligence as a matter of law); *Mavity*, 456 F. Supp. 2d at 34 (concluding that "a lay jury would not have the expertise or experience to evaluate the ramifications" of the defendant's failure to file evidence before a court-imposed deadline). Indeed, expert testimony may be required to establish the appropriate standard of care even when the failure to meet a deadline appears to be an obvious case of professional negligence. *See Spurlock v. Halprin*, 2006 WL 2346003, at *9-10 (M.D. Tenn. Aug. 11, 2006) (noting that although "the Court is unimpressed with [the defendant's] testimony that he made a strategic decision to file an untimely . . . motion" on a dispositive issue, "litigation strategy . . . is not easily examined by the ordinary, lay fact-finder without the aid of expert legal testimony").

The deadline at issue in this case was not a court-imposed, legally mandatory filing deadline. Rather, the deadline at issue here was an unspecified time during which the USDA expected the defendant to file paperwork in accordance with Gray's purported January 2001 settlement proposal. *See* Pls.' Renewed Opp'n at 4-6. In this court's view, it is far from clear that a lay jury could determine the significance of the defendant's alleged failure to comply with such deadlines without the aid of expert testimony. The court therefore concludes that this

allegedly negligent act does not fall within the common knowledge exception to the expert testimony requirement. Accordingly, the court grants summary judgment to the defendant with respect to the plaintiffs' malpractice claim premised on his alleged failure to meet USDA-imposed deadlines during settlement negotiations with the USDA.

### b. The Defendant's Alleged Conflict of Interest Does Not Fall Within the Common Knowledge Exception

The plaintiffs also allege that the defendant committed legal malpractice by failing to disclose a conflict of interest. Compl. ¶ 8. Specifically, the plaintiffs allege that the defendant had a conflict of interest while representing them in their claims against the USDA because "he is a registered lobbyist that represents special interests who were vying [for] and needed special financial considerations from the [USDA] for their business success to the detriment of the Plaintiffs['] legal needs." *Id.* The defendant admits that he is a registered lobbyist, but denies that any conflict of interest existed. Answer ¶ 8. Moreover, the defendant contends that expert testimony would be required to establish that this purported conflict of interest constituted malpractice, and further asserts that collateral estoppel bars the plaintiffs' claim. Def.'s Renewed Mot. at 4-6; Def.'s Reply to Pls.' Opp'n to Def.'s Renewed Mot. for Summ. J. ("Def.'s Reply") at 4-5.

Although some jurisdictions have held that no expert testimony is necessary in cases involving obvious conflicts of interest, *see, e.g.*, *Hill v. Okay Constr. Co.*, 252 N.W.2d 107, 116 (Minn. 1977), this Circuit has held that under D.C. law, assessing an alleged conflict of interest is a task that falls beyond the ken of a lay juror relying on common knowledge and requires expert testimony, *see, e.g.*, *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1174 (D.C. Cir. 2003) (applying D.C. law); *see also Handy v. Shaw, Bransford, Veilleux & Roth*, 2006 WL 3791387, at *4, *6 (D.D.C. Dec. 22, 2006) (applying D.C law). Indeed, the alleged conflict of

interest here is far less obvious than that in a case involving, for example, a malpractice claim against an attorney who represented both the plaintiff and defendant in a litigation.  *See Hill*, 252 N.W.2d at 116.

The court thus concludes that the plaintiffs cannot establish that the defendant's alleged conflict of interest amounted to legal malpractice without the benefit of expert testimony. Accordingly, the court grants summary judgment to the defendant on the plaintiffs' malpractice claim premised on this alleged conflict of interest.

### c.  The Defendant's Alleged Failure to Inform the Plaintiffs of the January 2001 Settlement Offer Falls Within the Common Knowledge Exception, But Further Evidence is Needed to Conclusively Grant or Deny Summary Judgment on this Issue

Finally, the plaintiffs allege that the defendant committed malpractice by failing to inform them of the USDA's January 2001 settlement proposal.  *See* Compl. ¶ 7; J. Carranza Aff. ¶ 11; A.M. Carranza Aff. ¶ 5.  They assert that they first learned of the January 2001 proposal when they spoke with Gray in Washington, D.C. in 2002.  Pls.' Renewed Opp'n at 4-6.  The plaintiffs contend that the defendant's failure to inform them of the January 2001 proposal constitutes an instance of malpractice that falls within the common knowledge exception. Compl. ¶ 7; Pls.' Renewed Opp'n at 4-7.  Although the defendant does not dispute that he had such a duty, he denies that he failed to keep the plaintiffs apprised of any developments in their case and asserts that settlement negotiations simply fell apart.  *See* Answer ¶ 7; Def.'s Renewed Mot. at 1.  Moreover, the defendant contends that expert testimony would be required to establish that this failure constituted malpractice, and further asserts that collateral estoppel bars the plaintiffs' claim.  Def.'s Renewed Mot. at 4-6.

Without question, an attorney has a duty to inform his client of meaningful settlement offers made in the course of civil litigation.  *See, e.g.*, D.C. RULES OF PROF'L CONDUCT R. 1.4(a)

cmt. 1 (providing that "[a] lawyer who receives from opposing counsel an offer of settlement in a civil controversy . . . is required to inform the client promptly of its substance");[6] *Sommers v. McKinney*, 670 A.2d 99, 104 (N.J. App. Super. 1996) (stating that "[o]nce settlement discussions commenced, [the attorney] was obliged to communicate all offers to [the client]"); *Rizzo v. Haines*, 555 A.2d 58, 66 (Pa. 1989) (stating that "[c]onsistent with ordinary skill and knowledge, it was incumbent upon [the attorney], as a matter of law, to communicate all settlement offers to his client"). The duty to inform clients of all settlement offers "derives from the settled principle that an attorney must have express authority from the client to settle the case." *Rizzo*, 555 A.2d at 66 (internal citations omitted).

Numerous courts have concluded that a breach of this duty falls within the common knowledge exception to the expert testimony requirement in a legal malpractice action. *See, e.g.*, *Joos v. Auto-Owners Ins. Co.*, 288 N.W.2d 443, 445 (Mich. App. 1979) (explaining that it is "well within the ordinary knowledge and experience of a layman jury to recognize that . . . the failure of an attorney to disclose [settlement offers] is a breach of the professional standard of care"); *see also Sommers*, 670 A.2d at 105 (concluding that no expert witness testimony was required to establish that an attorney's failure to brief his client on a settlement offer was a

---

[6]      The comment to Rule 1.4(a) of the D.C. Rules of Professional Conduct further states:

> The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. For example, a lawyer negotiating on behalf of a client should provide the client with facts relevant to the matter, inform the client of communications from another party, and take other reasonable steps that permit the client to make a decision regarding a serious offer from another party. A lawyer who receives from opposing counsel an offer of settlement in a civil controversy . . . is required to inform the client promptly of its substance.

D.C. RULES OF PROF'L CONDUCT R. 1.4(a) cmt. 1.

breach of duty to the client); *Rizzo*, 555 A.2d at 67 (holding that "breach of the duty to investigate, and to inform one's client of, settlement offers does not require expert testimony").

This court is satisfied that a lay jury could recognize, based on common knowledge, that an attorney's failure to inform his or her client of a settlement offer is a breach of duty owed to the client. A lay juror could surely recognize, based on common knowledge and common sense, that an attorney breaches the duty of care to a client when the attorney withholds from the client information about a settlement offer, which is certainly vital to the outcome of the client's case. Withholding such information precludes a client's ability to participate in any substantial way in decisions that go to the core of the attorney-client relationship.[7] *See* D.C. RULES OF PROF'L CONDUCT R. 1.4(a) cmt. 1. Thus, the court concludes that an attorney's failure to inform his or her client of a settlement offer falls under the common knowledge exception and does not require the client to present expert testimony to establish legal malpractice. Accordingly, the plaintiffs' inability to present expert testimony does not warrant granting summary judgment to the defendant on this claim.

The defendant also asserts that the plaintiffs' malpractice claim is barred by the doctrine of collateral estoppel based on this court's ruling in *Mavity v. Fraas*, in which the court held that expert testimony was required for the plaintiff to succeed on her legal malpractice claim. Def.'s

---

[7]     Although the plaintiffs assert that violations of the District of Columbia Rules of Professional Conduct are sufficient to demonstrate legal malpractice, Pls.' Renewed Opp'n at 6-7, the Rules themselves explicitly state that nothing in the Rules "is intended to enlarge or restrict existing law regarding . . . the requirements that the testimony of expert witnesses or other modes of proof must be employed in determining the scope of a lawyer's duty to others," D.C. RULES OF PROF'L CONDUCT, SCOPE. Similarly, violations of the American Bar Association's Code of Professional Responsibility cannot, by themselves, establish the standard of care. *Waldman v. Levine*, 544 A.2d 683, 690-91 (D.C. 1988). Such violations, however, do provide evidence of the relevant standard of care governing attorney conduct. *Id.*; *accord Williams v. Mordkofsky*, 901 F.2d 158, 163 (D.C. Cir. 1990); *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 75 (D.D.C. 1998).

Renewed Mot. at 5-6. This argument is meritless. Collateral estoppel, or issue preclusion, applies if three criteria are met: (1) if in the prior litigation, the issue was "actually litigated, that is, contested by the parties and submitted for determination by the court;" (2) if the prior litigation was "actually and necessarily determined by a court of competent jurisdiction;" and (3) if "preclusion in the second trial [does] not work an unfairness." *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (citations omitted). In *Mavity*, this court never addressed the issue of an attorney's failure to inform his client of a settlement offer. *See Mavity*, 456 F. Supp. 2d at 34-35 (explaining that the plaintiff alleged that the defendant (1) failed to adequately prepare and pursue her case though the administrative process, (2) failed to adequately prepare and present her case in a professional manner at trial and (3) failed to file evidence in a timely manner). *Mavity*, therefore does not have collateral estoppel effect on the plaintiffs' claim regarding the defendant's alleged failure to disclose the January 2001 settlement proposal and the court denies the defendant's motion for summary judgment with respect to this claim.

Nonetheless, the court notes that the evidence submitted by the plaintiffs suggests that they may, in fact, have been informed of the January 2001 settlement proposal. Specifically, in connection with their motion for a court-appointed expert witness, the plaintiffs submitted a letter from the defendant to a third party, dated January 9, 2001, which states that "Rosalind Gray, the Director of USDA's Office of Civil Rights (OCR) recently developed a proposal to settle the [plaintiffs'] civil rights case." Pls.' 1st Reply, Ex. H at 1. Similarly, in their opposition to the defendant's first motion for summary judgment, the plaintiffs attached another letter from the defendant to a third party, dated February 27, 2001, which states that "in January [2001] . . . the Director of the [OCR] extended to me a proposal to settle the case that would have put on the table an offer of substantial money damages to the Carranzas." Pls.' Opp'n to Def.'s 1st Mot. for

Summ. J. ("Pls.' 1st Opp'n"), Ex. 14 at 1. The facsimile notes accompanying both letters, *see id.*; Pls.' 1st Reply, Ex. H at 1, indicate that the defendant transmitted these letters to the plaintiffs, a fact that, if true, would significantly undermine the plaintiffs' assertion that the defendant never informed them of the January 2001 proposal, *see* J. Carranza Aff. ¶ 11; A.M. Carranza Aff. ¶ 5.

Moreover, the court notes that there is a paucity of evidence in the record documenting that the USDA officially made a formal settlement offer to the plaintiffs in January 2001. *See generally* Pls.' Renewed Mot.; Pls.' Renewed Opp'n; Pls.' Reply. The plaintiffs have not submitted any evidence, such as a declaration from Gray, confirming that the USDA extended an official settlement offer in January 2001. The evidence before the court establishes only that USDA was developing a second proposal and does not clearly establish that a second official settlement offer was formally extended. *See* Pls.' 1st Reply, Ex. H at 1, Pls.' 1st Opp'n, Ex. 14 at 1.

Thus, although the plaintiffs need not present expert testimony to support their malpractice claim premised on the defendant's failure to inform them of the January 2001 settlement offer, the evidence presented thus far raises serious questions about the viability of this claim. Accordingly, although the court denies the defendant's motion for summary judgment, it does so without prejudice to a renewed motion addressing the plaintiff's allegation regarding the defendant's failure to inform them of the January 2001 settlement offer. *See In re Breast Implant Cases*, 942 F. Supp. 958, 961 (S.D.N.Y. 1996) ("In cases where additional information is required to adequately pass on a motion for summary [judgment], the practice has been to deny the motion, with leave to renew, allowing further discovery and development of evidence."); 10A FED. PRAC. & PROC. § 2718 (observing that "it is within the trial court's

discretion to deny a motion for summary judgment without prejudice to its being renewed at a later time and the court may grant a renewed motion upon a showing of good cause"); *see also Greene*, 164 F.3d at 675 (noting that the purpose of summary judgment is to ensure that a case is sufficiently meritorious to warrant the expense of a trial). In granting the defendant leave to renew his motion, the court intends to provide the parties an opportunity to supplement the record with additional evidence and argument so that the court may determine whether there exists a genuine issue of material fact in dispute on this allegation.

### 3. The Defendant's Alleged Breach of Fiduciary Duty

The plaintiffs assert that the defendant breached the fiduciary duty he owed to them by violating the D.C. Rules of Professional Conduct. *See* Compl. ¶ 7; Pls.' Renewed Opp'n at 7. The defendant denies breaching his fiduciary duty to the plaintiffs. Answer ¶ 7.

In an action for legal malpractice, an additional claim for breach of fiduciary duty based on the underlying malpractice claim cannot survive if the legal malpractice claim fails. *Mawalla v. Hoffman*, 569 F. Supp. 2d 253, 257 (D.D.C. 2008); *Macktal v. Garde*, 111 F. Supp. 2d 18, 23 (D.D.C. 2000). As previously discussed, at this time, the court cannot at this time determine at this time the viability of the plaintiff's malpractice claim premised on the defendant's alleged failure to inform them of the January 2001 settlement offer. *See supra* Part III.B.2. Consequently, the court denies the defendant's motion for summary judgment on the plaintiff's fiduciary duty claim without prejudice to the court's consideration of a renewed motion.

### IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' renewed motion for relief upon reconsideration of the court's denial of their motion for a court-appointed expert witness, and grants in part and denies without prejudice in part the defendant's renewed motion for summary judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 7th day of February, 2011.


RICARDO M. URBINA
United States District Judge