UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

A. MARGARET AND                           :
JUANITA CARRANZA                          :
                                          :
          Plaintiffs,                     :
                                          :
     v.                                   :     Civil Action No.:  05-CV-00117 (RMU)
                                          :
PHILLIP L. FRAAS                          :
                                          :
          Defendant.                      :

**DEFENDANT PHILLIP L. FRAAS'**
**SECOND RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant, Phillip L. Fraas, by counsel, CARR MALONEY P.C., pursuant to this

Court's order of February 7, 2011 and Federal Rule of Civil Procedure 56, moves for summary

judgment, because there is insufficient evidence in the record to support plaintiffs allegations,

and for those reasons as more fully stated in the accompanying memorandum.

                         Respectfully submitted,

                         CARR MALONEY P.C.


               By:    /s/ Elizabeth A. Francis_____
                      Elizabeth A. Francis #473336
                      Dennis J. Quinn #455793
                      2000 L Street, N.W.
                      Suite 450
                      Washington, D.C.  20036
                      (202) 310-5500 (Telephone)
                      (202) 310-5555 (Facsimile)
                      djq@carrmaloney.com
                      eaf@carrmaloney.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing **_Defendant Phillip L. Fraas' Second Renewed Motion For Summary Judgment_** was electronically filed and mailed, postage prepaid, on this 25th day of April, 2011 to:

> A. Margaret Carranza, *Pro Se*
> Juanita Carranza, *Pro Se*
> P.O. Box 236
> Lambert, Montana 59243

> /s/ Elizabeth A. Francis
> Elizabeth A. Francis

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

A. MARGARET AND :
JUANITA CARRANZA :
                         :
       Plaintiffs, :
                         :
      v. : Civil Action No.:  05-CV-00117 (RMU)
                         :
PHILLIP L. FRAAS :
                         :
       Defendant. :

**DEFENDANT PHILLIP L. FRAAS'
STATEMENT OF MATERIAL FACTS NOT IN DISPUTE TO
THE SECOND RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant, Phillip L. Fraas, by counsel, and pursuant to Local Civil Rule 56.1, respectfully submits the following material facts not in dispute:

1.       Plaintiffs, Margaret and Juanita Carranza, are female farmers in Montana who retained Defendant Phillip Fraas to represent their interests arising out of alleged gender discrimination by the U.S. Department of Agriculture, Farm Services.  *See* January 1, 1998 Retainer Agreements (Exhibit 1), December 22, 1999 Retainer Agreements (Exhibit 2), and Complaint filed January 14, 2005 (Docket Entry No. 1).

2.       By May 29, 1998, the U.S. Attorneys' Office in Montana had already filed Abstracts of Judgment against the Carranzas for non-payment of outstanding debts.  *See* Exhibit 3.

3.       On December 14, 1998, the United States Department of Agriculture delivered to the Carranzas a written settlement offer of programmatic relief, forgiveness of their debt owed to Farm Services (at that point $536,915.84), $98,000 cash, and the ability to participate in any

USDA program or benefit in the future.  *See* Exhibit 4.[1]  The programmatic relief included the

USDA giving the Carranzas priority consideration on any application for the purchase, or other

acquisition of inventory property or return property in USDA's possession, and that the USDA

would pay plaintiffs' attorneys' fees.  *See* Exhibit 4.  The 1999 Written Settlement Offer was

signed by Rosalind Gray, Director of the Office of Civil Rights at the U.S. Department of

Agriculture and forwarded to the Carranzas.  *See* Exhibit 15, ¶4.

4.      The Carranzas received the 1998 Written Settlement Offer in January 1999.  *See*

Exhibit 5, ¶1.

5.      On February 4, 1999, Mr. Fraas spoke with Peter in Ms. Gray's Office.  Ms.

Gray's office was waiting for a counter offer.  *See* Exhibit 6.

6.      On February 18, 1999, 14 days after speaking with Ms. Gray's office, Mr. Fraas,

upon the direction of the Carranzas and with their approval, submitted a written counter offer to

Ms. Gray.  *See* Exhibit 5.  The Carranzas had made it clear that they agreed with the debt

forgiveness and wanted the programmatic relief, but with one modification.  However, the

Carranzas felt they were "owed substantially more in the way of compensatory damages than the

amount [the USDA] offered-$98,000."  *See* Exhibit 5, ¶2.  The Carranzas countered by

demanding the debt relief, the modified programmatic relief, $500,000 in cash, along with the

current appraised value of two lost farms, replacement value for a heard of sheep that they

valued at $50,000.00, $65,000.00 for lost equipment, compensation for dislocation costs

associated with the eviction, monetary compensation for the acts of discrimination and mental

---

[1]The Carranzas did not provide the last page of the 1999 Written Settlement Offer to Mr. Fraas during discovery, but did submit it to the Court on April 29, 2009.

and emotional distressed associated with the discrimination, and attorneys' fees and costs.  *See* Exhibit 5, p. 2, Exhibit 15, ¶6.

7.      Between February and September 1999, Mr. Fraas communicated with Ms. Gray's office regarding the Carranza matter.

8.      By September 11, 2000, Mr. Fraas had drafted a proposed letter to Ms. Gray and 8 pages of economic analysis.  The draft document was faxed to Mr. Dennis Garsjo, an economic expert, for review and for discussion with the Carranzas.  *See* Exhibit 7.  In a handwritten note on the document, Mr. Fraas asked Mr. Garsjo to "[p]lease take a look at this when you have a chance and call Juanita about it at 202-638-*** Room __.  Thanks Phil." *See* Exhibit 7.

9.      On September 12, 2000, Ms. Juanita Carranza testified before the Senate Agriculture Committee.

10.     Mr. Fraas' time entries show that on December 5, 6, 7, 11, and 12, 2000,[2] Mr. Fraas spoke with Ms. Juanita Carranza.  *See* Exhibit 8.

11.     On December 14, 2000, Mr. Fraas spoke with someone in the Office of Civil Rights at the USDA on behalf of the Carranzas' claims.  *See* Exhibit 8.

12.     On December 18, 2000, Mr. Fraas drafted a letter[3] to Ms. Gray and the USDA's General Counsel, Mr. C. Rawls, asking them to **open negotiations** on the Carranzas' claims.  *See* Exhibit 8 (emphasis added).

---

[2]Only time entries from December 2000 and January 2000 are cited.  Further, not all entries are cited to because some of the contemporaneously created entries are plainly not related to any alleged settlement.
[3]Mr. Fraas does not have a copy of this document because he forwarded his entire file to the Carranzas when they terminated his representation, without keeping a copy.  The Carranzas have not provided an entire copy of the file in discovery.  On April 15, 2011, Mr. Fraas spoke with the Attorney at the Howrey Firm that handled the Carranzas matter.  Mr. Fraas asked if Howrey could provide him a copy of his file.  Howrey turned over all files to the Carranzas when the Carranzas terminated the Howrey representation.  *See* Exhibit 15, ¶26.  A FOIA request for all documents related to any and all settlements and suit filed was submitted to USDA OCR, but was denied.  Mr.

13.     On December 19, 2000, Mr. Fraas spoke with Ms. Juanita Carranza.  *See* Exhibit 8.

14.     On December 21, 2000 Mr. Fraas spoke with Ms. Gray at OCR on behalf of the Carranzas' claims.  *See* Exhibit 8.

15.     On December 22, 2000, Mr. Fraas spoke with Mr. Rawls on behalf of the Carranzas' claims and left the Carranzas a voicemail.  *See* Exhibit 8.

16.     On December 28, 2000, Mr. Fraas spoke with Ms. Gray at OCR on behalf of the Carranzas' claims and left the Carranzas a voicemail.  *See* Exhibit 8.

17.     On December 29, 2000, Mr. Fraas spoke with Ms. Juanita Carranza.  *See* Exhibit 8.

18.     Mr. Fraas was successful in getting OCR to open negotiations on the Carranzas' matter.  On January 2, 2001, Mr. Fraas spent approximately two hours preparing for settlement negotiations that were planned for the Carranzas' matter.  He communicated with one of the Carranzas' retained experts, and with a staff member of Senator Baucus' office about the Carranzas' claims.  *See* Exhibit 8.

19.     On January 3, 2001, Mr. Fraas communicated with Ms. Juanita Carranza and with the USDA about the Carranzas' claims.  *See* Exhibit 8.

20.     On January 4, 2001, Mr. Fraas communicated with Ms. Gray at OCR, Ms. Pucket, and Ms. Juanita Carranza about the Carranzas' claims. *See* Exhibit 8.

---

Fraas' counsel requested that Ms. Juanita Carranza sign a joint FOIA request letter.  Ms. Juanita Carranza declined this request.

21.     On January 8, 2001, Mr. Fraas spoke with Ms. Juanita Carranza and prepared materials to submit to Ms. Gray regarding acts of discrimination against the Carranzas.[4]   *See* Exhibit 8.

22.     On January 9, 2001, Mr. Fraas learned that Ms. Gray was prepared to make "a substantial offer to settle the case," but because of the Montana Federal Court judgment debt, any settlement offer she would possibly make would go to pay off the outstanding judgment debt and still leave some amount due.  The Carranzas would not get a penny in settlement money, and still owe funds.  *See* Exhibit 11.  Mr. Fraas communicated this to the Carranzas on the phone on January 9, 2001, and via the January 9, 2001 Memorandum faxed to the Carranzas on January 10, 2001.  *See* Exhibit 9.

23.     On January 9, 2001, Mr. Fraas communicated with Ms. Gray, a staff member of Senator Baucus' office, and a staff member from Congressman Rehberg's office on behalf of the Carranzas' claims.  Mr. Fraas also communicated with Ms. Juanita Carranza about the matter.  *See* Exhibit 8.

24.     On January 9, 2001, Mr. Fraas sent Ms. Roberts in Senator Baucus' office a Memo regarding the Carranzas' matter.  The Memo states that Ms. Gray had recently "developed a proposal to settle the Carranzas' civil rights case that, in general terms, would have been acceptable to the Carranzas.  However, officials at the Office of General Counsel (OGC) have argued that the

---

[4]Mr. Fraas does not have a copy of this document because he forwarded his entire file to the Carranzas when they terminated his representation, without keeping a copy.  The Carranzas have not provided an entire copy of the file in discovery.  On April 15, 2011, Mr. Fraas spoke with the Attorney at the Howrey Firm that handled the Carranzas matter.  Mr. Fraas asked if Howrey could provide him a copy of his file.  Howrey turned over all files to the Carranzas when the Carranzas terminated the Howrey representation.  *See* Exhibit 15, ¶26.  A FOIA request for all documents related to any and all settlements and suit filed was submitted to USDA OCR, but was denied.  Mr. Fraas' counsel requested that Ms. Juanita Carranza sign a joint FOIA request letter.  Ms. Juanita Carranza declined this request.

settlement amount contemplated by OCR was too high, and thus severely limited Gray's settlement authority." *See* Exhibit 9, ¶ 1.

25.     The January 9, 2001 Memo goes on to say that "a big portion of the amount Gray would have offered to the Carranzas was monies needed to pay off the outstanding judgment the U.S. Government has against them.  It amounts to $558,000, plus interest since 1998." *See* Exhibit 9, ¶2.

26.     The January 9, 2001 Memo continues that if the debt "were still just owed to USDA, instead of having been converted to a judgment, OCR could have the debt written off and then have plenty of settlement authority (even with OGC's strictures) to make a credible offer to settle with the Carranzas for their damages in the case." *See* Exhibit 9, ¶ 3.

27.     The January 9, 2001 Memo goes on to explain that because the debt was reduced to a judgment, without the Montana U.S. Attorneys' Office agreement to forgive or compromise the judgment debt, "OCR would have to cut a check for the debt on top of what they would settle on the Carranzas for damages, making the total payment way more than OGC is willing to go with at this time . . . ." *See* Exhibit 9, ¶ 3.

28.     The January 9, 2001 Memo suggested that one way to settle the matter was to inquire "If the U.S. Attorney would entertain a compromise settlement of the judgment debt." *See* Exhibit 9, ¶ 4.  The Memo, while suggesting that the U.S. Attorneys' Office should write off the entire debt, argues that at a minimum, "the U.S. Attorney in Montana could … write off the part of the judgment that is accumulated interests.  The original loan in 1984 was only for $175,000…" *See* Exhibit 9, ¶ 5.

29.     The January 9, 2001 Memo states that if the U.S. Attorney agreed to a compromise settlement of $175,000, "then [the Carranzas] could go back to OCR and try to get, as part of a settlement, a FSA loan to pay off the principal to the U.S. Attorney.  With that, the settlement would fly."  *See* Exhibit 9, ¶6.

30.     The January 9, 2001 Memo goes on to say, "What the U.S. Attorney would be getting is $175,000 in compromise debt.  **That is $175,000 more than they stand to get now!** …. There is nothing there—zero—for the U.S. Attorney unless this case is settled, and it won't be settled unless they do this compromise."  *See* Exhibit 9, ¶7 (emphasis in original).

31.     The January 9, 2001 Memo was carbon copied to Juanita and Margaret Carranza and faxed on January 10, 2001.  *See* Exhibit 9.

32.     On January 10, 2001, Mr. Fraas spent approximately an hour drafting a Reply to the USDA issue and spoke with Senator Baucus' staff.  *See* Exhibit 8.

33.     On January 11, 2001, Mr. Fraas learned from a "congressional office" that the Montana U.S. Attorneys' Office considered the judgment debt totally uncollectible and had turned it back to the USDA.  Mr. Fraas believed that this suggested that the judgment had been removed as a roadblock to settlement, and efforts were made along those lines.  *See* Exhibit 11.  On this date Mr. Fraas spoke with Ms. Juanita Carranza about the matter. *See* Exhibit 8.

34.     January 12, 2001 was a Friday.

35.     January 13, 2001 was a Saturday.

36.     January 14, 2001 was a Sunday.

37.     January 15, 2001 was a Monday and a Federal Holiday.

38.     On January 16, 2001, Mr. Fraas spoke with Ms. Juanita Carranza. *See* Exhibit 8.

7

39.     On January 17, 2001, Mr. Fraas spoke with a staffer in Senator Baucus' office and exchanged voicemails with Ms. Juanita Carranza.  *See* Exhibit 8.

40.     On January 18, 2001, Mr. Fraas spoke with Ms. Juanita Carranza.  *See* Exhibit 8.

41.     On January 18, 2001, Ms. Gray sent a letter to Ms. Juanita Carranza, c/o Phil Fraas, Esquire, and a carbon copy was sent directly to Ms. Juanita Carranza.  *See* Exhibit 10, Exhibit 15, ¶7.

42.     The January 18, 2001, letter stated, among other things:

> The Department of Agriculture (USDA), Office of Civil Rights, has completed its review of your April 30, 1993, discrimination complaint.  … Based on this review, we have concluded that the facts of your case was appropriate for resolution (sic).  However, your attorney advised this office that any offer not sufficient to pay your debt is unacceptable.  Since **I am of the opinion that any offer this office would make will not exceed the sum**, I will forward your case, as your attorney agreed, for a hearing before an administrative law judge.

*See* Exhibit 10, ¶1 (emphasis added), Exhibit 15, ¶8.

43.     On January 19, 2001, Mr. Fraas received and reviewed the letter from Ms. Gray.  *See* Exhibit 8.  Mr. Fraas left the Carranzas a voicemail.  *See* Exhibit 8.

44.     January 19, 2001 was a Friday.

45.     January 20, 2001 was a Saturday.

46.     January 21, 2001 was Sunday.

47.     On January 22, 2001, Mr. Fraas spoke with Ms. Juanita Carranza about Ms. Gray's January 18th letter.  *See* Exhibit 8.

48.     On January 23, 2001, Mr. Fraas spoke with Ms. Juanita Carranza.  Mr. Fraas also spoke with Merv Yetley, a former USDA economist with contacts there that Mr. Fraas knew.  *See*

Exhibit 8.  Mr. Fraas spoke to Mr. Yetley about the Carranzas' case and asked Mr. Yetley to attempt to discern the status of the Carranzas' matter at USDA.

49.     On January 23, 2001, Mr. Fraas sent Ms. Juanita Carranza a fax copy of the January 23, 2001 Memorandum that he drafted and sent to Senator Burns' office, Congressman Rehberg's office, Senator Baucus' office D.C Office and Montana Office, updating them on the status of the Montana Civil Rights Cases.  *See* Exhibit 11.

50.     The January 23, 2001 Memo stated that, "After 4 months of foot-dragging by Rosalind Gray's office," on January 9, 2001 Mr. Fraas learned that Ms. Gray "was prepared to make the Carranzas a substantial offer to settle the case, but that there is a huge judgment against the Carranzas in the Montana Fed court that would eat up all of the money in her offer and then some." *See* Exhibit 11.

51.     The January 23, 2001 Memo went on to say that any offer Ms. Gray was prepared to make "would not put one red cent in the Carranzas' hands.  [Mr. Fraas] asked her not to make such a ludicrous offer, but to let [him] pursue resolving the judgment debt."  *See* Exhibit 11.

52.     The January 23 Memo explained that Mr. Fraas had learned, with the help of a congressional office, "that the U.S. Attorney's office (sic) considered the judgment debt totally uncollectible and had turned it back to the USDA.  This suggested that we could get the judgment removed as a roadblock to settlement, and efforts were made along those lines."  *See* Exhibit 11.

53.     The January 23 Memo explained that despite the great efforts made those last three days of Ms. Gray's tenure at OCR, they could not get the judgment debt forgiven therefore "**a settlement offer was not made**." *See* Exhibit 11 (emphasis added).

9

54.     The January 23 Memo explained that the case had "been removed from the Director's office and now [was] in the process of being sent the Administrative Law Judges for an ALJ hearing." *See* Exhibit 11.

55.      The January 23 Memo explained that "the ALJ process [was] not necessary if the new folks at OCR could make a push with the Montana U.S. (or USDA if they have the judgment) to dispose of the worthless judgment and proceed with the offer drawn up (**but not actually made**) by Gray." *See* Exhibit 11 (Emphasis in original).

56.     On January 24, 2001, Mr. Fraas communicated with Ms. Juanita Carranza about the status of the matter.   *See* Exhibit 8.

57.     On January 26, 2001, Mr. Fraas communicated with Ms. Juanita Carranza and staffers on the hill. *See* Exhibit 8.

58.     On January 29, 2001, Mr. Fraas communicated with staffers on the hill and Ms. Juanita Carranza. *See* Exhibit 8.

59.     By January 31, 2001, Mr. Fraas was still tirelessly communicating with the Office of Civil Rights on behalf of the Carranzas - now under the direction of the new administration. *See* Exhibit 8.

60.     On February 27, 2001, at the request of the Carranzas, Mr. Fraas sent Scot Brown,[5] Agricultural Loan Officer at McCone County Federal Credit Union, a Memorandum about the status of the Carranzas' matter. *See* Exhibit 14.

61.     The February 27, 2001 Memo was faxed to the Carranzas on February 28, 2001. *See* Exhibit 14.

---

[5]The February 27, 2001 Memo incorrectly spells Mr. Scot Brown's name as "Scott."

62.     The February 27, 2001 Memo stated "the case advanced forward considerably in January.  At that time, the Director of the Office of Civil Rights. ("OCR") extended to me a proposal to settle the case that **would have** put on the table an offer of substantial money damages to the Carranzas."  *See* Exhibit 14 (emphasis added).  The Memo goes on to explain that the outstanding federal judgment in Montana against the Carranzas was an impediment to the settlement.  *See* Exhibit 14 ¶2.  Mr. Fraas explained that he had been working to get the judgment lifted or compromised, "so as to allow consideration of the January **settlement proposal** drafted by the Office of Civil Rights."  *See* Exhibit 14 ¶2 (emphasis added).

63.     Mr. Fraas continued working on behalf of the Carranzas until they terminated his representation on January 29, 2002.  *See* Exhibit 12.

64.     In January 2002, the Carranzas were in town to support the Mavitys during the *Sharon Mavity v. Ann M. Veneman, Secretary, U.S. Department of Agriculture*, at the U.S. District Court for the District of Columbia.

65.     The Carranzas, Ms. Gray, and Mr. Ronald Cotton, and others waited in the Witness Room outside of the Courtroom where the *Mavity v. Veneman* trial was held.  *See* Exhibits 15, Affidavit of Rosalind Gray ¶¶ 11-15 and 16, Affidavit of Ronald Cotton ¶¶ 6 and 7.

66.     Ms. Gray and Mr. Cotton spent their time in the Witness room talking amongst themselves.  *See* Exhibit 16, ¶ 7.

67.     Ms. Gray does not remember any settlement offer made by the USDA Office of Civil Rights that was higher than the one provided in the December 1998 Written Settlement Offer.  *See* Exhibit 15, ¶17.

68.     However, despite all of the above, on November 19, 2002, the Carranzas again

signed a retainer agreement with Mr. Fraas.  The Carranzas signed Retainer Agreements to have Phillip L. Fraas, Alexander J. Pires, Jr. of Conlon, Frantz, Phelan & Pires, and Alan M. Wiseman, Kenneth C. Anderson, and Robert L. Green, Jr. of Howrey Simon Arnold & White to represent them as class participants in the *Garcia v. Veneman* matter.  *See* Exhibit 12.

69.     On January 14, 2005, the Carranzas filed a *pro se* Complaint against Defendant Fraas, alleging legal malpractice.  *See* Complaint filed January 14, 2005.

70.     On April 23, 2007, the Court stayed this matter pending the decision in an appeal in the *Mavity v. Fraas* matter being considered by the D.C. Circuit Court of Appeals.  *See* Docket Entry Apr. 23, 2007.

71.     On February 11, 2009, the Court lifted the stay in the present action and ordered the parties to resubmit dispositive motions in accordance with the Court's deadlines.  *See* Docket Entry Feb. 11, 2009.

72.     On March 24, 2009, Mr. Fraas filed his Motion for Summary Judgment, asking that the entire Complaint be dismissed with prejudice.  *See* Docket Entry No. 29.

73.     On February 7, 2011, the Court denied the Carranzas' renewed motion for relief upon reconsideration; granting in part and denying in part without prejudice Mr. Fraas' renewed motion for summary judgment.  *See* Docket Entry No. 38.  The Court stated, "in granting the defendant leave to renew his motion, the court intends to provide the parties an opportunity to supplement the record with additional evidence and argument so that the Court may determine whether there exists a genuine issue of material fact in dispute on this allegation."  *See* Feb. 7, 2011 Memorandum Opinion, p. 21.

Respectfully submitted,

CARR MALONEY P.C.

By:  /s/ Elizabeth A. Francis_____
Elizabeth A. Francis #473336
Dennis J. Quinn #455793
2000 L Street, N.W.
Suite 450
Washington, D.C.  20036
(202) 310-5500 (Telephone)
(202) 310-5555 (Facsimile)
djq@carrmaloney.com
eaf@carrmaloney.com

13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| A. MARGARET AND | : | |
| JUANITA CARRANZA | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No.:  05-CV-00117 (RMU) |
| | : | |
| PHILLIP L. FRAAS | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT PHILLIP L. FRAAS' MEMORANDUM IN SUPPORT
OF HIS SECOND RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant, Phillip L. Fraas, through undersigned counsel, CARR MALONEY P.C., submits the following memorandum in support of his supplemental motion for summary judgment.

Preliminary Statement

The only remaining issue in this case is the Carranzas' allegation that Mr. Fraas failed to inform them of a January 2001 settlement offer from the Department of Agriculture.  This allegation also fails, as there is no evidence in the record to support it. In fact, there is no evidence to support there was an actual settlement offer made in January 2001.  The Carranzas base their claim on a series of winks and nods allegedly made by Rosalind Gray in 2002, which they claim confirmed their belief that USDA had offered to settle the case for $1.8 million. But the Carranzas do not and cannot offer any actual evidence of such an offer, because there was *no* settlement offer made in January 2001.

The contemporaneous evidence from late 2000 through to February 2001, plus an affidavit from Phillip Fraas and Rosalind Gray herself, proves that USDA did not make a written settlement offer to the Carranzas other than the one made in December 14, 1998.  Ms. Gray did

develop a settlement *proposal* that she discussed with Mr. Fraas, and which was relayed to the Carranzas, but because the dollar amount proposed was less than the judgment debt the Carranzas owed, in the end the offer was never actually made.   Ms. Gray states in her affidavit that any possible settlement contemplated by the Office of Civil Rights was not enough to extinguish the Carranzas' outstanding debt and put substantial funds in the Carranzas' hands. The record shows that Mr. Fraas was in constant communication with the Carranzas throughout the representation, but especially in January 2001, and that he prepared several memoranda discussing the settlement proposals that he faxed to his clients.    There are no material facts in dispute, thus, Mr. Fraas is entitled to summary judgment.

## FACTS

Margaret and Juanita Carranza are female farmers in Montana.   In January 1998, the Carranzas retained Phillip Fraas to represent them in an alleged gender discrimination claim they filed against the U.S. Department of Agriculture, Farm Services.  *See* Ex. 1 & 2.

*The December 1998 Settlement Offer*

In December 1998, the USDA's Office of Civil Rights offered to settle the Carranzas' claims against the USDA, based upon an agricultural economic analysis.  *See* SoMF ¶3, Ex. 3. On December 14, 1998, Ms. Rosalind Gray, Director of OCR, signed a written settlement offer that was forwarded directly to the Carranzas.  *Id.,* Ex. 15, ¶4.  The 1998 Settlement Offer included an offer of programmatic relief, forgiveness of their debt owed to Farm Services (at that point $536,915.84), $98,000 cash, and the ability to participate in any USDA program or benefit in the future.  *Id.*  The Carranzas received the 1998 Settlement Offer in January 1999.  *See* SoMF ¶4, Ex. 5, ¶1.   This was an actual, written settlement offer signed by Ms. Gray of OCR; not a

conversation about the possibility of settlement.   On February 4, 1999, OCR asked Fraas to submit a counter offer to 1998 Settlement Offer.  *See* SoMF ¶6, Ex. 6.

*The Counter Offer*

On February 18, 1999, Mr. Fraas, with the Carranzas' approval, submitted a counter offer to Ms. Gray demanding the debt relief, the modified programmatic relief, $500,000 in cash, along with cash for the current appraised value of two lost farms, replacement value for a heard of sheep that they valued at $50,000.00, $65,000.00 for lost equipment, compensation for dislocation costs associated with the eviction, monetary compensation for the acts of discrimination and mental and emotional distressed associated with the discrimination, and attorneys' fees and costs.  *Id.*

Between February and September 2000, Mr. Fraas communicated with OCR about the Carranzas' matter.  *See* SoMF ¶7.  By September 11, 2000, Mr. Fraas prepared a draft letter and economic analysis to send to Ms. Gray.  *See* SoMF ¶8, Ex. 7.   Mr. Fraas forwarded the draft letter and economic analysis to Mr. Dennis Garsjo, an economic expert that was retained on behalf of the Carranzas.[6]  *Id.*   Mr. Fraas asked Mr. Garsjo to review the draft letter and the analysis and discuss them with Ms. Juanita Carranza.  *Id.*

Mr. Fraas communicated with Ms. Carranza regularly between September 2000 and the termination of the representation. During December 1, 2000 and January 31, 2001, Mr. Fraas

---

[6]     Mr. Fraas does not have a copy of the final version of this document because he forwarded his entire file to the Carranzas when they terminated his representation, without keeping a copy.  The Carranzas have not provided an entire copy of the file in discovery.  On April 15, 2011, Mr. Fraas spoke with the Attorney at the Howrey Firm that handled the Carranzas matter.  Mr. Fraas asked if Howrey could provide him a copy of his file.  Howrey turned over all files to the Carranzas when the Carranzas terminated the Howrey representation.  *See* Exhibit 15, ¶26.  A FOIA request for all documents related to any and all settlements and suit filed was submitted to USDA OCR, but was denied.  Mr. Fraas' counsel requested that Ms. Juanita Carranza sign a joint FOIA request letter.  Ms. Juanita Carranza declined this request.

communicated with them by telephone or voicemail at least twenty-five times.  *See* Ex. 8.
During December 2000 and January 2001, Mr. Fraas kept the Carranzas updated on all aspects of
their matter, generally speaking to them a couple of times per week.  *Id.*

   *Fraas Asks USDA to Reopen Negotiations*

   On December 18, 2000, Mr. Fraas drafted a letter to Ms. Gray requesting that the USDA
and OCR open negotiations on the Carranzas' claims.  Ex. 8.  On December 19, 2000, Mr. Fraas
spoke with Juanita Carranza on the phone.  *See* SoMF ¶13, Ex. 8.  On December 21, 2000, Mr.
Fraas spoke with Ms. Gray on behalf of the Carranzas' claims.  *See* SoMF ¶14, Ex. 8.  On
December 22, 2000, Mr. Fraas spoke with Mr. C. Rawls (USDA General Counsel) on behalf of
the Carranzas.  *See* SoMF ¶15, Ex. 8.  On December 22, 2000, Mr. Fraas left Ms. Juanita
Carranza a voicemail.  *Id.*  On December 28, 2000, Mr. Fraas spoke with Ms. Gray about the
Carranzas' claims and left the Carranzas a voicemail.  *See* SoMF ¶16, Ex. 8.  On December 29,
2000, Mr. Fraas spoke with Ms. Juanita Carranza.  *See* SoMF ¶17, Ex. 8.

   After successfully lobbying OCR to open negotiations on the Carranzas' claims, on
January 2, 2001, Mr. Fraas spent approximately two hours preparing for the settlement
negotiations by, among other things, communicating with retained experts and staff at Senator
Max Baucus' Office about the Carranzas' claims.  *See* SoMF ¶18, Ex 8.  On January 3, 2001,
Mr. Fraas communicated with Ms. Juanita Carranza and the USDA about the Carranzas' claims.
 *See* SoMF ¶19, Ex 8.  On January 4, 2001, Mr. Fraas communicated with Ms. Gray, Ms. Punket
(a retained expert), and Ms. Juanita Carranza about the status of the matter.  *See* SoMF ¶20, Ex
8.

*The USDA Proposal and the January 9th Memorandum*

During his many conversations with USDA, Mr. Fraas learned that Ms. Gray was developing a *settlement proposal* for the Carranzas.  However, the amount Ms. Gray was authorized to offer was not enough to cover the substantial judgment debt that the Carranzas owed.  *See* SoMF ¶22, Ex 11.  Mr. Fraas described the offer that Ms. Gray was prepared to make as "ludicrous," leaving the Carranzas with an amount of their debt remaining unpaid, and without any funds in hand.  *See* SoMF ¶51, Ex 11.   On January 9th, 2001 Mr. Fraas spoke with Juanita Carranza about the matter and drafted a Memo to update Senator Baucus.  *See* SoMF ¶¶22-31.  According to the January 9th Memo, Ms. Gray's proposal to settle the matter provided that the settlement monies would be used to pay off part of the Carranzas' debt, which amounted to $558,000 plus interest since 1998, and because the debt had been converted to a judgment held by the U.S. Attorney's Office, USDA could not write off the debt, which would have made the settlement possible.  *Id.*

In the January 9th Memo Fraas suggested a counter proposal: if the U.S. Attorneys' Office in Montana would agree to enter into a compromise settlement of the judgment debt and accept the original value of the loan $175,000.00 (without the interest that had accumulated), then the matter could settle.  *Id.*  If the U.S. Attorneys' Office agreed to the compromise value, then the Carranzas could get a USDA Farm Services loan for the $175,000 and the matter would settle.  *Id.*  Mr. Fraas made it clear in the memo that unless the U.S. Attorneys' Office agreed to the compromise debt, the matter would not settle.  *Id.*  Fraas faxed the Memo to the Carranzas on January 10, 2001, so they were aware of all aspects going on.  *See* SoMF ¶31.  This contemporaneously created document underscores that any settlement contemplated by OCR was

less than what the Carranzas owed, and not the substantial payoff that the Carranzas now argue OCR made and Mr. Fraas failed to relay to them.

On January 11, 2001, Mr. Fraas learned from a congressional office that the U.S. Attorneys' Office had determined that the judgment debt against the Carranzas was totally uncollectible. *See* SoMF ¶33, Ex. 11. Once the U.S. Attorneys' Office determined that the judgment debt was uncollectible, they turned the judgment over to the USDA. *Id.* Mr. Fraas informed Ms. Juanita Carranza of this discovery by telephone on that date. *See* SoMF ¶33, Ex. 8.

### The January 18th Letter from Rosalind Gray

On January 18, 2001, near the end of Ms. Gray's term at OCR, she wrote a letter to the Carranzas delivered via Mr. Fraas, with a copy to the Carranzas directly. The letter stated:

> [We] have concluded that the facts of your case was appropriate for resolution (sic). However, your attorney advised this office that any offer not sufficient to pay your debt is unacceptable. Since **I am of the opinion that any offer this office would make will not exceed the sum**, I will forward your case, as your attorney agreed, for a hearing before an administrative law judge.

*See* SoMF ¶42, Ex. 10 (emphasis added), Ex. 15, ¶¶7, 8.

Ms. Gray's letter made two things very clear: first, that any potential offer would not exceed the amount the Carranzas owed. Second, that there had not been a settlement offer. *See* SoMF ¶42. This is the only document that the Carranzas received from OCR/USDA in January 2001 that addressed potential settlement in any way.

On Friday January 19, 2001, Mr. Fraas received and reviewed the letter, and left Ms. Carranza a voicemail asking that she contact him to discuss it. *See* SoMF ¶43. On Monday, January 22, 2001, Mr. Fraas and Juanita Carranza spoke about Ms. Gray's January 18, 2001

letter and the status of the Carranzas' matter in light of the letter.  *See* SoMF ¶47, Ex. 8.

*The January 23rd Memorandum*

On January 23, 2001, Mr. Fraas drafted a Memo that was faxed to the Carranzas and sent to Senator Burns' office, Congressman Rehberg's office, and Senator Baucus' D.C. and Montana Office.  *See* SoMF ¶49.  The January 23, 2001 Memo updated the recipients on the status of the Montana Civil Rights Cases at USDA.  *Id.*

In his January 23rd Memorandum Fraas explained to the Senators and Congressman that "[a]fter 4 months of foot-dragging by Rosalind Gray's office," he had learned on January 9, 2001 that Ms. Gray "was prepared to make the Carranzas a substantial offer to settle the case, but that there is a huge judgment against the Carranzas in the Montana Fed court that would eat up all of the money in her offer and then some."  *See* SoMF ¶50, Ex. 11.   The Memo explained that any offer Ms. Gray was prepared to make "would not put one red cent in the Carranzas' hands.  [Mr. Fraas] asked her not to make such a ludicrous offer, but to let [him] pursue resolving the judgment debt."  *See* SoMF ¶51, Ex. 11.  This document further shows that that any settlement proposal discussed was less than the debt the Carranzas owed, and that no settlement offer was actually made.

Mr. Fraas explained that he had learned, with the help of a congressional office, "that the U.S. Attorneys' Office considered the judgment debt totally uncollectible and had turned it back to the USDA.  This suggested that [Mr. Fraas and the Carranzas] could get the judgment removed as a roadblock to settlement, and efforts were made along those lines."  *See* SoMF ¶52, Ex. 11.

In the end, as the January 23rd Memo explained, despite all the efforts made those last three days of Ms. Gray's tenure at OCR, Mr. Fraas could not get the judgment debt forgiven.  Therefore "**a settlement offer was not made**."  *See* SoMF ¶55, Ex. 11 (emphasis added).  The

7

contemporaneously created Memo again highlights that USDA never actually made a settlement offer.

Mr. Fraas was still hopeful that the new Administration at USDA and in the OCR would be willing to forgive the judgment debt and settle the matter.  He communicated with the Carranzas, staffers on Capitol Hill, and the Deputy Administrator at OCR in an effort to keep the ball rolling on the judgment debt forgiveness or compromise and a settlement offer made.  *See* SoMF ¶¶55-59.

*The February 27th Memorandum*

Again on February 27, 2001, Mr. Fraas documented that there had been a proposal for settlement in an amount less than the debt the Carranzas' owed.  On February 27, 2001, Mr. Fraas drafted a Memo to Scot Brown,[7] an Agricultural Loan Officer at McCone County Federal Credit Union, in connection with a loan the Carranzas applied for.  *See* SoMF ¶60, Ex. 14.   The February 27, 2001 Memo explained the status of the Carranzas' case.  *See* SoMF ¶¶60-63, Ex. 14.  Mr. Fraas faxed the February 27, 2001 Memo to the Carranzas on February 28, 2001.  *See* SoMF ¶61, Ex. 14.

The February 27, 2001 Memo again stated that the outstanding judgment debt was an impediment to the settlement.  *See* SoMF ¶62, Ex. 14.  Mr. Fraas explained that he had been working to get the judgment forgiven or compromised, "to allow consideration of the January settlement **proposal** drafted by the Office of Civil Rights."  *Id.* (emphasis added).  This is the fourth contemporaneously created document that the Carranzas received, stating there was a discussion about possibility of settlement, but no actual offer.

---

[7]The February 27, 2001 Memo incorrectly spells Mr. Scot Brown's name "Scott."

*The Carranza's Allegations*

Despite all the contemporaneous documentation created in 2001 stating there was no settlement offer made in December 2000 or January 2001, the Carranzas allege there was an OCR settlement offer large enough to pay off their debt and provide them with a large amount of cash, and that Mr. Fraas never relayed it to them. *See* Plts. Apr. 29, 2009 Opp., at 4-5. Instead of providing proof of this alleged settlement offer, the Carranzas allege they learned of it in 2002 when they were waiting in a witness room with Ms. Gray outside of the Courtroom where the *Mavity v. Veneman* trial was being held. *Id.* The Carranzas' allege that they discussed the Montana cases with Ms. Gray and asked why the cases did not settle. *See* Plt. Apr. 29, 2009 Opp – Ex. 5.

The Carranzas state that Ms. Gray informed them via a non-verbal smile and shake of her head that there was a settlement offer of $1,800,000 approved by USDA Office of General Counsel and USDA Office of Civil Rights. *Id.* The Carranzas also allege that Ms. Gray told them that the judgment in Montana being a road block to settlement was "something cooked up between [Mr. Fraas] and Victoria Francis, Montana Assistant United States Attorney." *Id.*

*Mr. Cotton's Affidavit*

Ronald Cotton, another USDA employee who accompanied Ms. Gray to the trial in January 2002, remembers it differently. Mr. Cotton states that he and Ms. Gray spent most of the time at the District Court in the witness room discussing Ms. Gray's testimony. *See* Exhibit 16, ¶5-7. Mr. Cotton did not leave Ms. Gray alone with the Carranzas. *See* Exhibit 16, ¶6. Mr. Cotton does not remember any conversations with between Ms. Gray and the Carranzas about any potential settlements contemplated by OCR when Ms. Gray was the director. *See* Exhibit

16, ¶8.   The only conversation that Mr. Cotton remembers with the Carranzas was a request for a cigarette from someone who left the room in search of a smoke.

*Rosalind Gray's Affidavit*

Ms. Gray does not remember any extensive conversations with the Carranzas.  *See* Ex.15, ¶ 15, 16.  More telling, Ms. Gray is certain that the USDA never approved a settlement for more than was offered in the December 1998 Written Settlement Offer.  *See* Ex. 15, ¶17.  If the Carranzas valued their economic damages in the $700,000 range, the USDA would have valued their damages as less.  The only settlement offer Ms. Gray remembers is the December 14, 1998 written offer that the Carranzas turned down in an effort to get more money.

ARGUMENT

I.   Legal Standard

Under the Federal Rules of Civil Procedure, summary judgment shall be entered if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Williams v. Callaghan*, 938 F.Supp 46 (D.D.C. 1996). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotations omitted).  It is the function of this District Court to determine whether any pertinent factual controversy actually exists. *Exxon Corp. v. Federal Trade Commission*, 663 F.2d 120 (D.C.Cir.1980).  Thus, the non-moving party is required to provide evidence that would permit a reasonable jury to find in her favor. *Laningham v. U.S. Navy*, 813 F.2d 1236 (D.C.Cir.1987).  "Mere allegations or denials of the adverse party's pleading are not enough to

prevent the issuance of summary judgment." *Williams*, 938 F.Supp at 49 (citing Fed.R.Civ.P. 56(e)).   Furthermore, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993).   Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Greene*, 164 F.3d at 675.   If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson,* 477 U.S. at 249-50 (internal citations omitted).

II.     P̲L̲A̲I̲N̲T̲I̲F̲F̲S̲ ̲C̲A̲N̲N̲O̲T̲ ̲E̲S̲T̲A̲B̲L̲I̲S̲H̲ ̲A̲ ̲P̲R̲I̲M̲A̲ ̲F̲A̲C̲E̲ ̲C̲A̲S̲E̲ ̲O̲F̲ ̲L̲E̲G̲A̲L̲ ̲M̲A̲L̲P̲R̲A̲C̲T̲I̲C̲E̲

To establish a prima facie case of legal malpractice in the District of Columbia, "a plaintiff must establish the applicable standard of care, a breach of that standard of care, and a causal relationship between the violation and the harm complained of."  *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1174 (D.C.Cir. 2003) (internal quotations omitted).   As discussed below, plaintiff cannot establish a prima facie case of legal malpractice.

A.      Plaintiffs Cannot Prove That The Defendant Breached the Standard of Care Because There Was No Settlement Offer From the Office of Civil Rights in 2001 that the Defendant Did Not Relay to the Plaintiffs.

There are four major points that belie the Carranzas' allegations that there was a substantial settlement offer proffered by the Office of Civil Rights that Mr. Fraas did not relay to them:  1) there is no 2001 written settlement offer; 2) if there had been a written settlement offer in 2001, it would have been mailed to the Carranzas' via Mr. Fraas with a carbon copy directly to the Carranzas, the Carranzas have not provided one; 3) there are four contemporaneously created 2001 documents describing the actions of the Office of Civil Rights and Mr. Fraas efforts on behalf of the Carranzas, and saying no offer was actually made; and 4) Mr. Fraas communicated

on the telephone or via voicemail approximately twenty-five times between December 1, 2000 and January 31, 2001.   Furthermore, Mr. Fraas testifies in his Affidavit that he kept the Carranzas informed about all activities related to the Carranzas' matter (including any and all communications with OCR), that Ms. Gray never made an actual settlement offer in 2001, and that OCR did not offer $1,800,000 dollars to settle the matter.  *See* Exhibit 17.  For these reasons, the last two counts that remain in the Carranzas' Complaint should be dismissed with prejudice.

        i.        There Is No 2001 Written Settlement Offer.

As proof of the 1998 Written Settlement Offer the Carranzas provided the actual document.  *See* Exhibit 4.  The Carranzas have not provided a written settlement offer dated 2001.  That is because there is no 2001 settlement offer.   Mr. Fraas testifies in his affidavit that Ms. Gray did not make an actual settlement offer in January 2001.   If there had been 2001 settlement offer it would have been put in writing, as was the standard practice of the Office of Civil Rights.   If this document exists, the Carranzas should produce it.   The fact that no document has been provided proves that there was no written settlement offered by the Office of Civil Rights.

        ii.        Documents Sent to the Carranzas From the Office Of Civil Rights Were Sent to the Carranzas via Mr. Fraas with a Carbon Copy to the Carranzas directly.

Had there been a formal written settlement offer in 2001, instead of verbal communications about possible settlement offers, there would have been a written document sent to the Carranzas via Mr. Fraas with a carbon copy sent directly to the Carranzas.  This was the practice of OCR in 2001.  Also, the 1998 Written Settlement Offer was sent to the Carranzas directly.  *See* SoMF ¶¶3 & 4, Ex. 4 & 5, ¶1.  Further, the January 18, 2001 letter that Ms. Gray

sent to the Carranzas was sent to them via Mr. Fraas with a carbon copy sent directly to the Carranzas.  *See* Exhibit 10.  There was no settlement offer actually made as evidenced by the lack of a written settlement offer dated 2001.

> iii.   There are Four Documents That Were Created In 2001 That State Any Settlement Offer Contemplated Was Less Than The Carranzas' Owed and Not Actually Offered

Four contemporaneously created 2001 documents that were sent to the Carranzas in 2001, clearly state that any offer that was contemplated but not actually made by Ms. Gray would have been less than the Carranzas' outstanding debt, or barely enough to pay off their outstanding debt.

The January 9, 2001 Memo stated "… a big portion of the amount Gray **would** have offered the Carranzas' was monies needed to pay off the outstanding judgment…."  *See* Exhibit 9, ¶2 (emphasis added).  The January 18, 2001 Letter from Ms. Gray stated "[h]owever, your attorney advised this office that any offer not sufficient to pay off your debt is unacceptable. Since I am of the opinion that any offer this office would **make will not exceed this sum** . . . ." *See* Exhibit 10, ¶1(emphasis added).  The January 23, 2001 Memo made it clear that "there is a huge judgment against the Carranzas in the Montana Fed. Court that would eat up all the money in [Ms. Gray's] offer and then some."  *See* Exhibit 11.  The January 23, 2001 Memo goes on to say ". . . if the new folks at OCR could make a push with the Montana U.S. Attorney (or USDA if they have the judgment) to dispose of the worthless judgment and proceed with the offer drawn up (**but not actually made**) by Gray.  *Id.* (emphasis added).   Lastly, the February 27, 2001 Memo explained that that there was a proposal to settle with the Carranzas, but that the Montana Federal court judgment was an "impediment to the settlement."  *See* Exhibit 14.

These four documents that were created in 2001 belie the Carranzas' allegation that OCR had put forward a million dollar settlement offer that Mr. Fraas failed to relay to them. Further, each document was provided to the Carranzas in 2001, keeping them fully abreast of all actions in their case. Further, Ms. Gray does not remember any settlement offer made by the USDA Office of Civil Rights that was higher than the one provided in the December 1998 Written Settlement Offer. *See* Exhibit 15, ¶17.

iv.     Mr. Fraas Communicated Regularly With The Carranzas in December 2000 and January 2001.

On top of the four documents listed in Section iii that the Carranzas' received in 2001, Mr. Fraas was in constant contact with the Carranzas' in December 2000 and January 2001. The time records that he kept during this period show that there are approximately twenty-five time entries for telephone communications or voicemails exchanged with Ms. Juanita Carranza. It is without merit for the Carranzas to now argue that they were not kept abreast of the happenings in their matter by Mr. Fraas; four documents and twenty-five communications in two month period show the level of diligence that Mr. Fraas was expending on the Carranzas' case.

These four major points belie the Carranzas' allegations: no 2001 written settlement offer, no carbon copy mailed directly to the Carranzas, four contemporaneously created 2001 documents describing the actions of the Office of Civil Rights and Mr. Fraas efforts on behalf of the Carranzas, saying no offer was actually made, and approximately twenty-five communications between December 1, 2000 and January 31, 2001. Furthermore, Mr. Fraas testifies in his Affidavit that he kept the Carranzas informed about all activities related to the Carranzas' matter (including any and all communications with OCR), that OCR did not offer $1,800,000 dollars to settle the matter, and in fact, OCR never actually made a settlement offer.

14

*See* Exhibit 17.  Ms. Gray does not remember any settlement offer made by the USDA Office of Civil Rights that was higher than the one provided in the December 1998 Written Settlement Offer.  *See* Exhibit 15, ¶17.  For these reasons, the last two counts that remain in the Carranzas' Complaint should be dismissed with prejudice.

CONCLUSION

There is no 2001 written settlement offer, all documentation from OCR was mailed to the Carranzas via Mr. Fraas, with a carbon copy directly to the Carranzas, the plaintiffs have not provided a 2001 written settlement offer, four documents created in 2001 say that any potential settlement would have been less or barely less than the Carranzas owed, and that no offer was actually made, and Mr. Fraas was in constant communication with the Carranzas during December 2000 to January 2001.  Further, Mr. Fraas himself testifies that he relayed all activities related to the Carranzas' matter to the Carranzas.  These facts are proven by contemporaneously created documents and not by conjecture or allegations.  For the reasons set forth above, Defendant Phillip L. Fraas respectfully requests that the Court grant his Motion for Summary Judgment.

Respectfully submitted,

CARR MALONEY P.C.

By:     /s/ Elizabeth A. Francis
        Elizabeth A. Francis #473336
        Dennis J. Quinn #455793
        2000 L Street, N.W., Suite 450
        Washington, D.C.  20036
        (202) 310-5500 (Telephone)
        (202) 310-5555 (Facsimile)
        djq@carrmaloney.com
        eaf@carrmaloney.com

15

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing ***Defendant Phillip L. Fraas' Memorandum in Support of the Second Renewed Motion For Summary Judgment*** was electronically filed and mailed, postage prepaid, on this 25th day of April, 2011 to:

    A. Margaret Carranza, *Pro Se*
    Juanita Carranza, *Pro Se*
    P.O. Box 236
    Lambert, Montana 59243


    /s/ Elizabeth A. Francis
    Elizabeth A. Francis

16

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

A. MARGARET AND                        :
JUANITA CARRANZA                       :
                                       :
          Plaintiffs,                  :
                                       :
     v.                                :          Civil Action No.:  05-CV-00117 (RMU)
                                       :
PHILLIP L. FRAAS                       :
                                       :
          Defendant.                   :

## ORDER

For the reasons stated in the court's Memorandum Opinion separately and contemporaneously issued this ___ day of _____, 2011, it is hereby

**ORDERED** that the defendants Second Renewed Motion for Summary Judgment is **GRANTED with prejudice**, and it is

**FURTHER ORDERED** that the plaintiffs' remaining claims for legal malpractice and breach of fiduciary duty are DISMISSED WITH PREJUDICE, and it is

**FURTHER ORDERED** that this matter is closed.

**SO ORDERED.**

_____
United States District Judge

1

Copies to:

Dennis J. Quinn, Esquire
Elizabeth A. Francis, Esquire
Carr Maloney P.C.
2000 L Street, N.W.
Suite 450
Washington, D.C.  20036

A. Margaret Carranza, *Pro Se*
Juanita Carranza, *Pro Se*
P.O. Box 236
Lambert, Montana 59243